## City of Chicago v. Nora Thomas, Administratrix.

### Gen. No. 13,684.

1. NEGLIGENCE—*when city guilty of, in failing to protect approaches to bridge.* It is negligence for a city to fail to prevent the public from entering upon an open bridge under its control by not sufficiently lighting the approaches or providing a watchman therefor or otherwise.

2. ORDINARY CARE—*from what may be inferred.* Direct evidence of the exercise of ordinary care is not essential; its exercise may be inferred from all the surrounding circumstances shown; the natural instinct of self-preservation may be considered.

3. EVIDENCE—*when objection to, comes too late.* An objection to the competency of evidence comes too late when first made on appeal.

4. EVIDENCE—*what competent as to care exercised with respect to approaches to bridge.* Evidence of precautions taken by a city during the daytime to prevent the public from entering an open bridge is competent as tending to show the care which the public might expect to be exercised by such city in the night time.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. P. W. GALLAGHER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed May 1, 1908.

**Statement by the Court.** This is an action to recover for the death of Charles Thomas alleged to have been caused by the negligence of appellant.

The accident occurred at the Twelfth street bridge November 7, 1902, at about 7:30 P. M. Two witnesses saw the deceased and his team go over the abutment into the river, the bridge having been opened to permit passage of a vessel. These men testify that they

crossed the bridge from the west just before the accident; that when they were within a short distance of the bridge the bell on the bridge rang and they ran across while the bridge was turning. They continued their way eastward upon Twelfth street and saw ahead of them near the crossing of Twelfth street and Fifth avenue a team approaching at a walk from the east, the driver sitting in the wagon. They seem to have paid no further attention to the team until they looked around when they were near Fifth avenue about two hundred feet from the bridge, and saw the wagon with a man in it going over the edge of the abutment into the river. They ran back and saw a man "swimming around." A vessel was coming through from the south. One of the horses was rescued. The body of appellee's intestate was recovered some days later. The deceased left a wife and five children.

The issues were submitted to a jury which returned a verdict in favor of appellee for $5,000. Judgment was rendered accordingly, from which the city prosecutes this apeal.

EDWARD J. BRUNDAGE, Corporation Counsel, and JOHN R. CAVERLY, for appellant; JOSEPH B. DAVID, of counsel.

MILES J. DEVINE, for appellee; JOHN T. MURRAY, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the city was not bound to maintain a watchman, nor to provide guards or chains at the bridge. It appears from the evidence that there was a chain at the entrance to the east end of the bridge which in the daytime was stretched across the street by an officer to stop traffic when the bridge was opened. At the time of the accident there was no officer there and the chain had not

been put up. There is evidence not disputed to show that an electric light located on the street at the east end of the bridge was dim and "flickering." As one witness says, "it was pretty near out, pretty near dark." It is true the bell on the bridge was rung just as the latter was about to be swung open, but at that time deceased was apparently over two hundred feet away and according to one witness was on Fifth avenue, from which he was turning on to Twelfth street when the witness saw him. If this testimony is to be credited, and it is not questioned, the deceased was not in sight of the bridge at the time the bell gave its warning and possibly not in hearing of the bell. There was, it appears, a red light on the bridge itself, but it was at the time in the middle of the river, and not in a position to attract special attention. It is evident that such an opening in the public street over the river, with no one present to give warning and insufficient light to call attention to the absence of the bridge, was exceedingly dangerous. The city recognized the danger in the daytime and provided chain and watchman to guard against it. If it was regarded as the duty of the city to furnish such protection in the daylight, no reason appears why the duty should have been neglected after dark when it is obvious from the evidence the danger was greatly increased. In City of Chicago v. Wright, 68 Ill. 586, a case in which the facts were essentially like those in the case at bar, it was held that the jury having found the city guilty of negligence "in not using proper precautions to protect the public against casualties like the one in question," there was nothing in the evidence to justify disturbing the verdict. To the same effect is City of Chicago v. Powers, 42 Ill. 169. It is not questioned that the light at the east approach to the bridge was at the time of the accident dim and nearly out.

In the case last cited it was held to be as much a part of the duty of the city "to light the bridge as any other portion of the street." That duty was not be-

ing performed when this accident occurred, and we are of opinion the jury were justified in finding the city guilty of negligence in that connection. If the light was out of order it was the duty of the city to take other measures to guard the opening when the bridge was open. In City of Chicago v. Baker, 195 Ill. 54-61, it is said that whether or not a city is bound to light its streets "it is not denied that where it undertakes to do so it must properly light" them.

It is urged, however, that if the city was negligent in not sufficiently lighting the approach to the bridge and in not maintaining guards or a watchman there it does not appear that such negligence was the proximate cause of the accident. The jury found otherwise and were, we think, amply justified by the evidence in so finding.

It is said the evidence fails to show the deceased not guilty of contributory negligence. There was no witness and no evidence as to what precautions the deceased was taking, if any, when he approached the dangerous opening. Due care may, however, be "inferred from all the circumstances immediately prior to and at the time of the injury," and "it was not incumbent upon appellee to establish care and caution" by direct and positive testimony. Chicago City Ry. Co. v. Fennimore, 99 Ill. App. 174-177; C. & E. I. R. Co. v. Beaver, 199 Ill. 34-36. The natural instinct prompting to the preservation of life, and the evidence of danger may be taken into consideration in determining such question. See also N. C. St. R. Co. v. Rodert, 203 Ill. 413-415.

Objection is made to the admission of the evidence which tended to show that a chain was in use at the approach to the end of the bridge at different times and that a policeman was stationed there in the daytime. The evidence was not objected to when introduced, and it is too late to make the objection here for the first time. We are of opinion, however, that the evidence was competent. The deceased had driven

across the bridge in the daytime, and it was a question for the jury whether the city was negligent in omitting at night a precaution which the deceased might, so far as appears, have expected would also be taken when the bridge was open at night. We find no error in the admission of evidence tending to show the habits of the deceased as to sobriety.

Complaint is made as to certain instructions, but we find no material error in that respect. It is conceded the verdict and judgment are not excessive in amount.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*